IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ADETUNJI FASHINA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:12-CV-822-N-BK |
| § | |
| FEDERAL HOME LOAN MORTGAGE § | |
| CORPORATION, § | |
| § | |
| Defendant. § | |

### FINDINGS, CONCLUSIONS and RECOMMENDATION

This case has been referred to the undersigned for pretrial management. (Doc. 4). The Court now considers Defendant's *Motion to Dismiss* (Doc. 18). For the reasons discussed below, it is recommended that the motion be **GRANTED IN PART**.

### BACKGROUND[1]

On February 17, 2012, *pro se* Plaintiff Adetunji Fashina filed suit against the Federal Home Loan Mortgage Corporation ("Defendant") in state court in connection with Defendant's foreclosure of his home. (Doc. 1). Liberally construed, Plaintiff's *First Amended Complaint* alleges causes of action against Defendant for (1) violations of the Real Estate Settlement Procedures Act (RESPA); (2) violations of the Texas Deceptive Trade Practices Act (DTPA) and related Debt Collection Practices Act (TDCPA); (3) common law fraud; (4) negligence; (5) negligent misrepresentation; (6) gross negligence; (7) breach of contract; and (8) wrongful

---

[1] In deciding this Rule 12(b)(6) motion, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoted case omitted).

foreclosure.[2]  (Doc. 14).  Plaintiff purchased the property at issue through a mortgage loan which was secured by a Deed of Trust.  (*Id.* at 5, Docs. 19-1, 19-2).

After losing his job in November 2010, Plaintiff sent Defendant a hardship letter and proof of unemployment insurance in order to request a loan modification.  (Doc. 14 at 5). Plaintiff claims he was subsequently approved for forbearance of loan payments while his account was under review for loan payment modification by Defendant.  *Id.*  Throughout the modification process, Plaintiff gained and lost employment.  *Id.* Plaintiff claims that as a consequence, each time his employment status changed, he notified Defendant and requested the appropriate modification of his loan payment plan.  *Id.*  Plaintiff asserts that he was required to submit additional documents in order to process his modification application, and was advised by Defendant that it would take a few weeks to process the modification of his plan.  *Id.*

After gaining and subsequently losing employment in September 2011, Plaintiff was told by Defendant's representatives that he did not qualify for a modification plan but could apply for reconsideration.  *Id.*  After resubmitting the requisite documents, Plaintiff was told by Defendant's representatives that it would take approximately six weeks to reach a decision on his application.  *Id.*  Plaintiff states that as he waited for a decision, he began receiving foreclosure letters, including letters from attorneys.  *Id.* at 5-6.  According to Plaintiff, the letters stated that a foreclosure sale would take place on November 22, 2011.  *Id.* at 6.

Plaintiff attempted to contact the loan processor, Margaret Stochowiak, on more than one occasion but was unsuccessful in reaching her.  *Id.* at 5-6.  Eventually, however, Plaintiff reached

---

[2] The Court liberally construes the *pro se* complaint to attempt to allege a wrongful foreclosure claim based on Plaintiff's repeated references to "wrongful foreclosure" in his amended complaint and his allegations of defects in the foreclosure proceedings.  *See First State Bank v. Keliman*, 851 S.W.2d 914, 921-922 (Tex. App.—Austin 1993) (holding that a debtor may recover damages for common-law wrongful foreclosure for defects within the foreclosure sale itself).

2

Ms. Stochowiak, who informed him that his home was in "foreclose status [sic]," but assured Plaintiff that she would put in a request to postpone the date of the foreclosure while Plaintiff's account was under review. *Id.* at 6. Subsequently, Plaintiff claims that the loan review department approved him for a loan payment forbearance plan. *Id.*

According to Plaintiff, the forbearance plan documents arrived on the afternoon of Saturday, November 19, 2011, which prevented him from making a mortgage payment at a Wells Fargo bank before they closed for the weekend. *Id.* Plaintiff claims that he attempted to make a payment on the following Monday, November 21, 2011, however, the teller at the bank refused his payment because his account was "very past due." *Id.*

Plaintiff rushed to contact loan processor, Ms. Stochowiak. *Id.* Plaintiff avers that Ms. Stochowiak made an exception and took his payment over the phone on November 22, 2012. *Id.* However, on November 25, 2011, Plaintiff received a letter stating his home was foreclosed on November 22, 2011. *Id.* Plaintiff states that while attempting to contact Ms. Stochowiak, he spoke with several of Defendant's agents, who claimed that they would "put in a request to reverse the [s]ale since the initial payment was made." *Id.* When Plaintiff finally reached Ms. Stochowiak, she informed Plaintiff that the checking account number he gave her over the phone was invalid and, therefore, his payment was not received and the foreclosure sale was final. *Id.*

Plaintiff alleges that (1) he was not given notice of default or notice to cure as required under Texas law; (2) he was not given notice of acceleration or notice of foreclosure as required in his deed of trust; and (3) Defendant failed to post a notice of a non-judicial foreclosure sale and file such notice in the Dallas County records, as required by Section 51.002(b) of the Texas Property Code. *Id.* at 7. Plaintiff argues that the foreclosure wrongfully took place while his

account was under appeal review, and he is seeking damages and attorney's fees, as well as declaratory and injunctive relief. *Id.* at 13.

On March 20, 2012, Defendant removed the case to this Court, and on June 26, 2012, filed its *Motion to Dismiss* pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 18). After a review of each party's arguments and the applicable law, the Court recommends that Defendant's *Motion to Dismiss* be **GRANTED IN PART**.

## APPLICABLE LAW

Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). However, a complaint must be dismissed under Rule 12(b)(6) when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (citations omitted). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

Under the Rule 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). When considering a motion to dismiss, the court accepts as true all well-pleaded facts and views those facts in a light most favorable to the plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). A complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Id.*

The tenet that a court must accept as true all allegations contained in a complaint when ruling on a Rule 12(b)(6) motion is inapplicable to legal conclusions, however. *Iqbal*, 556 U.S. at 678. The complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity; the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted). A complaint, thus, is not sufficient if it merely contains "naked assertions" devoid of factual enhancement. *Iqbal*, 556 U.S. at 678. However, a complaint need not set forth all the facts upon which a claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 545.

## ANAYLSIS

1. ***National Bank Act Preemption***

Defendant contends that "Plaintiff's purported state law claims for DTPA violations, fraud, negligence, negligent misrepresentation, and gross negligence should be dismissed because they are preempted by the NBA [National Bank Act]" and more specifically, the related regulations of the Office of the Comptroller of Currency (OCC). (Doc. 18 at 12-14). Defendant argues:

> Plaintiff's claims are based on his allegations that Wells Fargo improperly scheduled the Property for foreclosure while Plaintiff's loan modification was pending. *See* Am. Compl. at ¶ 4. In addition, Plaintiff alleges that Wells Fargo failed to appropriately apply a mortgage payment to his account. *See id.* at ¶¶ 3-5 & 24-26. These allegations fall squarely within the loan activities listed in Section 34.4(a), which authorize national banks to make real estate loans without regard to state limitations regarding "terms of credit, including . . . balance, payments due," and "circumstances under which a loan may be called due and payable," and encompass processing and servicing of, and participation in, mortgages.

(Doc. 18 at 14).

As noted in Defendant's brief, section 34.4(a) only provides that "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its [f]ederally authorized real estate lending powers do not apply to national banks"; and only when "state law 'significantly impair[s] the exercise of authority, enumerated or incidental under the NBA, the [s]tate's regulations must give way.'" (Doc. 18 at 13 (citing 12 C.F.R. § 34.4(a); *Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 12 (2007))). Defendant alleges only that Plaintiff's claims are preempted under the NBA and OCC, and completely fails to address how the Texas state law upon which those claims are founded, specifically the DTPA and common law causes of action for fraud, negligence and gross negligence, impair Defendant's ability to fully exercise its federally-authorized real estate lending powers. To paraphrase the Court of Appeals for the Fifth Circuit, "the principal question before this Court is whether the Texas [ ] statute stands in irreconcilable conflict with, and is consequently preempted by, federal law." *Wells Fargo Bank of Texas NA v. James*, 321 F.3d 488, 491 (5th Cir. 2003). Defendant's argument wholly lacks merit.

### 2. *Real Estate Settlement and Procedures Act (RESPA) claim*

Plaintiff alleges Defendant violated RESPA by failing to properly respond to qualified written requests ("QWR") in which Plaintiff sought information on the eligibility of a loan modification. (Doc. 14 at 8). Plaintiff claims that his written applications for a loan modification, each of which included a hardship affidavit and financial information, qualify as QWRs. *Id.* Plaintiff additionally claims that his written requests for an "investigation of misrepresentations made by Defendant [ ] with respect to their mortgage account was a 'qualified written request.'" *Id.* [3] Plaintiff claims that he suffered damages, "including but not limited to

---

[3] The Court will construe a *pro se* litigant's allegations liberally; therefore, contrary to Defendant's arguments, the Court assumes Plaintiff mistakenly labeled this Defendant "BAC" in his *Amended Complaint*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

loss of credit, foreclosure emotional harm, embarrassment and humiliation," due to Defendant's non-compliance with RESPA. *Id.* In its *Motion to Dismiss*, Defendant contends that Plaintiff's correspondence does not qualify as a QWR, and therefore it cannot be governed under the mandatory response provisions of RESPA. (Doc. 18 at 15).

A QWR is a correspondence that adequately identifies the borrower and provides reasons for the borrower's belief "that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). "If any servicer of a federally-related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information *relating to the servicing of such loan*, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." 12 U.S.C. § 2605(e) (emphasis added).

Because Plaintiff's written loan modification request, hardship letter and financial information did not dispute or request information about how her loan was being serviced, they do not constitute a QWR under RESPA. *See, e.g.*, *Shatteen v. J.P. Morgan Chase Bank, Nat. Ass'n*, 2010 WL 4342073, at *8 (E.D. Tex. 2010) (Plaintiff's loan modification request did not constitute a QWR); *Hill v. Wells Fargo Bank, N.A.*, 2012 WL 2065377, at *6 (S.D. Tex. 2012) (loan modification request accompanied by financial information and hardship letter did not constitute QWR). Consequently, Plaintiff has failed to state a claim under RESPA. It is recommended that Defendant's motion to dismiss Plaintiff's RESPA claim be **GRANTED**.

   3. ***Texas Deceptive Trade Practices Act***

Plaintiff alleges Defendant violated the Texas Deceptive Trade Practices -- Consumer Protection Act ("DTPA") by "taking advantage of Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree and by representing that an agreement confers

or involves rights, remedies, or obligations [that] it [did] not." (Doc. 14 at 9).  Plaintiff also claims that Defendant engaged in false, misleading or deceptive acts that involve the DTPA "tie in" statutes of the Debt Collection Act and Section 393.504 of the Texas Finance Code regarding Credit Service Organizations.  *Id.*

Defendant counters in its motion to dismiss that Plaintiff's DTPA allegations are fatally defective because 1) Plaintiff is not a consumer under the DTPA, 2) Plaintiff fails to allege factual allegations, and 3) the economic loss rule bars Plaintiff's claim.  (Doc. 18 at 16).

### a. DTPA

Under the Texas Financial Code, "[a] violation of [the TDCPA] is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code [i.e., the DTPA], and is actionable under that subchapter."  TEX. FIN. CODE § 392.404(a).  However, to plead a plausible DTPA claim, it is not enough to allege that a defendant committed a "deceptive trade practice."  Under the DTPA, "a consumer may maintain an action where any of the following [i.e., a list including 'deceptive act or practice'] constitute a producing cause of economic damages or damages for mental anguish."  TEX. BUS. & COM. CODE § 17.50.  Therefore, Plaintiff must plead sufficient facts to establish his standing to bring suit as a consumer.  *Biggers*, 767 F. Supp. 2d at 733.

To qualify as a consumer under the DTPA, (1) the person must have sought or acquired goods or services by purchase or lease and (2) the goods or services purchased or leased must form the basis of the complaint.  TEX. BUS. & COM. CODE § 17.45(4).  A person who only seeks to borrow money is not a consumer, within the meaning of the DTPA, because lending money involves neither a good nor a service.  *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984).  *See also Shatteen v. J.P. Morgan Chase Bank, Nat. Ass'n*, 2010

WL 4342073, at *8 (E.D. Tex. 2010) ("money is not a good and an extension of credit is not a service," thus the plaintiff is not a consumer under the DTPA).  Moreover, the loan modification Plaintiff sought cannot be defined as a good or service under the DTPA.  *See Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App.—Fort Worth 2007) (holding plaintiffs who merely sought refinancing of loan were not consumers under the Act).

Because Plaintiff has failed to establish that he has standing as a consumer under the DTPA, his DTPA claims should be dismissed for failure to state a claim.[4]  Thus, it is recommended that Defendant's motion to dismiss Plaintiff's DTPA be **GRANTED**.

### b.  Texas Debt Collection Practices Act

Plaintiff additionally alleges that Defendant violated the Texas Debt Collection Practices Act (TDCPA).  (Doc. 14 at 9).  The TDCPA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts.  *See Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986).  A "debt collector" is one "who directly or indirectly engages in debt collection," and includes creditors collecting their own debts.  TEX. FIN. CODE § 392.001(6); *Monroe v. Frank*, 936 S.W.2d 654, 659-60 (Tex. App.–Dallas 1996).

Consumers have standing to bring suit under the Act, and the definition of consumer includes any "individual who has a consumer debt."  TEX. FIN. CODE ANN. § 392.001(1). Additionally, this Court has held that "foreclosure actions inevitably involve a debt collection aspect" that is actionable under the TDCPA.  *Biggers v. BAC Home Loans Servicing*, LP, 767 F. Supp. 2d 725, 732 (N.D. Tex. February 10, 2011) (Fitzwater, J.).

The Court finds Plaintiff has pleaded sufficient facts to survive dismissal under Rule 12(b)(1) of his TDCPA claim.  In his *Amended Complaint*, Plaintiff alleges (1) he was not given

---

[4] Because the Court has determined that Plaintiff lacks standing to bring a DTPA claim, it is not necessary to reach Defendant's economic loss rule argument.

notice of default or notice to cure as required under Texas law; (2) he was not given notice of acceleration or notice of foreclosure as required in his deed of trust; and (3) Defendant failed to post a notice of a non-judicial foreclosure sale and file such notice in the Dallas County records, as required by Section 51.002(b) of the Texas Property Code. (Doc. 14 at 7). Moreover, Plaintiff argues that the foreclosure wrongfully took place while his account was under appeal review. *Id.* Taking Plaintiff's factual allegations as true, Defendant's foreclosure action violated Texas law. *See Biggers*, 767 F. Supp. 2d at 732.

Thus, it is recommended that Defendant's motion to dismiss Plaintiff's TDCPA claim be **DENIED.**

### 4.  *Common Law Fraud*

Plaintiff's complaint alleges that Defendant made "material false representations to Plaintiff with knowledge of their falsity or with reckless disregard of the truth with the intention that such representations [are] acted upon Plaintiff and that Plaintiff relied on these representations to their detriment." (Doc. 14 at 9). Plaintiff avers that Defendant intended to conceal material facts with the intent to induce Plaintiff to enter into a transaction. *Id.* at 10. Defendant argues, however, that Plaintiff has failed to state a claim and has not met the heightened fraud pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. 18 at 19). Defendant also claims that Plaintiff's fraud claim is barred by the statue of frauds and the economic loss rule. *Id*. at 19-20.

Although Plaintiff suggests a more relaxed standard of Rule 9(b) should apply, the rule remains that "in allegations alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as

well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (internal citation omitted). In sum, Rule 9(b) requires "the who, what, when, where, and how" to be laid out. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *modified on reh'g*, 355 F.3d 356 (5th Cir. 2003).

Defendant correctly asserts that Plaintiff's allegations simply fail to meet this standard. Plaintiff has made general, conclusory allegations of fraud relating to Defendant's failure to abide by its written agreement forbearance agreement and subsequent, oral agreement to postpone the foreclosure sale. As a claim of fraud, his allegations are not sufficiently supported with relevant facts. However, Plaintiff's complaints that Defendant breached both agreements would subject Defendant to liability in contract, not in tort. *Southwestern Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Thus, any common-law fraud claims fail. Accordingly, to the extent Plaintiff has attempted to allege a claim for common law fraud, Defendant's motion to dismiss should be **GRANTED**. Plaintiff's breach of contract claims is subsequently discussed.

5. *Negligence, Negligent Misrepresentation, Gross Negligence*

Plaintiff alleges Defendant was negligent in failing to receive and apply Plaintiff's November 22, 2012, mortgage payment. (Doc. 14 at 10). He also claims Defendant negligently misrepresented the facts relating to the loan modification approval and appeal process, which he relied upon to his detriment. *Id*. at 11. Additionally, Plaintiff contends that Defendant's concealment and nondisclosure of material facts surrounding the modification of his loan constituted gross negligence. *Id.* at 10. Defendant argues in its motion to dismiss that Plaintiff has not alleged sufficient facts to establish his negligence claims; nevertheless, Plaintiff's claims

are barred by the economic loss doctrine, statute of limitations; and statute of frauds. (Doc. 18 at 20-21).

    A.    **Economic Loss Rule**

Under Texas law, the economic loss rule precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties. *See Southwestern Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Stated differently, a claim in tort will not lie when the only injury alleged is for economic damages that are caused by the failure to perform a contract. *Sterling Chems, Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 796-98 (Tex. App.– Hous. [1st Dist.] 2007). Nevertheless, if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff may bring a tort claim in addition to a claim for breach of contract. The economic loss rule applies to real estate transactions. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

To determine whether a plaintiff may recover on a tort theory, courts look at the nature of the plaintiff's loss. *See Sterling Chems*, 259 S.W.3d at 796-98. In *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510-511 (Tex. 1947), the state's highest court found that the plaintiff had a cause of action in contract, due to an implied duty on the defendant to make the repairs properly, as well as in negligence, because the defendant also had a duty to use reasonable diligence in making the repairs so as not to injure the plaintiff's property. Moreover, in *Century Surety Co. v. Hardscape Const. Specialties, Inc.*, 578 F.3d 262, 270 (5th Cir. 2009), the Fifth Circuit Court of Appeals noted that while the plaintiff's cause of action for faulty pool and deck construction sounded solely in contract, if the plaintiff had alleged that the faulty construction separately damaged its business interests or adjacent property, it might have had a tort cause of action as well.

Here, Plaintiff alleges he was damaged when Defendant failed to use ordinary care in resolving the issues with Plaintiff's account. (Doc. 14 at 10). He seeks damages for mental anguish and harm to his credit history, among other things. *Id.* at 12. Based on these allegations, and in light of the holdings in the *Scharrenbeck* and *Hardscape Const. Specialties* cases, Plaintiff's negligence claims are not barred by the economic loss rule. Thus, the Court must address those claims on the merits.

### B.  Negligent Misrepresentation

A claim for negligent misrepresentation requires a showing that: (1) the defendant made a representation in the course of a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered a monetary loss by justifiably relying on the representation. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 687 n.24 (Tex. 2002). A claim for negligent misrepresentation under Texas law contemplates that the "false information" provided by the defendant is a misstatement of *existing* fact. *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996) (emphasis in original). Thus, if a defendant's representation was a misstatement as to a future action to be taken by the defendant, it is not actionable because a promise to do or refrain from doing something does not concern an existing fact. *Id.* at 358; *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007).

Plaintiff alleges a number of misrepresentations upon which he relied to his detriment: (1) Ms. Stochowiak's assurance to Plaintiff that she would put in a request to postpone the date of the foreclosure while Plaintiff's account was under review; (2) Defendant's written approval of a loan payment forbearance plan; and (3) assertions by Defendant's agents that that they

would "put in a request to reverse the [foreclosure sale] since the initial payment was made" under the forbearance agreement. (Doc. 14 at 6-7). However, Defendant's alleged promises to postpone and, subsequently, to reverse the foreclosure sale cannot support a negligent misrepresentation claim as both were promises to perform future actions. *See Clardy Manufacturing Co.*, 88 F.3d at 357-58. On the other hand, Defendant's alleged written approval of a loan payment forbearance plan may give rise to a negligent misrepresentation claim. *Cf. Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 441-42 (Tex. 1992) (plaintiff had a cause of action against a lender who negligently misrepresented that the lender had approved their loan).

Therefore, it is recommended that Defendant's motion to dismiss Plaintiff's negligent misrepresentation claim be **DENIED,** but only as to Defendant's alleged misrepresentation that Plaintiff was approved for a loan modification.

### C. Negligence and Gross Negligence

Under Texas law, the elements of a negligence claim are (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). To state a claim for gross negligence, Plaintiffs must show that (1) viewed objectively from the actor's standpoint, the act or omission complained of creates an extreme degree of risk of seriously harming others, and (2) the actor had actual, subjective awareness of the risk, but chose to proceed in conscious indifference to the rights, safety, or welfare of others. *See Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001).

The pivotal issue in negligence claims is the plaintiff's proof of the existence of a duty owed to him, for it is the violation of any such duty that establishes liability in tort. *Id.* Here,

Defendant did not owe a duty of care to Plaintiff separate from that contained in the parties' contract. *See FDIC v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990) (noting that the relationship of mortgagor and mortgagee does not ordinarily involve a duty of good faith); *Coleman v. Bank of America, N.A.*, 2011 WL 2516169, at *1 (N.D. Tex. 2011) (Kaplan, J.) (holding that Texas does not "recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power"). Consequently, Plaintiff's negligence and gross negligence claims fail.[5] It is recommended, therefore, that Defendant's motion to dismiss Plaintiff's negligence and gross negligence claims be **GRANTED**.

   6. ***Breach of Contract***

Plaintiff claims that the action and/or omissions of the Defendant and its agents constitute breach of contract and give rise to economic and actual damages. (Doc. 14 at 11-12). In its *Motion to Dismiss*, Defendant argues that Plaintiff has failed to allege facts to establish a breach of contract claim and, regardless, Plaintiff's claim is barred by the statute of frauds. (Doc. 18 at 26).

To plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) that he performed or tendered performance under the contract; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages as a result of the breach. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003). Certain contracts are only valid if they are in writing. They include any promise, undertaking, commitment, or agreement where a financial institution loans, delays repayment, agrees to loan or delay

---

[5] Defendant also argues that Plaintiff's admission that Defendant's negligent conduct "occurred over two years ago" bars Plaintiff from asserting a negligence claim. However, because the Court concludes that the motion to dismiss should be granted on other grounds, it is unnecessary to reach that argument.

repayment, or otherwise make a financial accommodation to which the amount in question exceeds $50,000 must be in writing. TEX. BUS. & COM. CODE § 26.02(a)(2). As is relevant here, an agreement to modify an existing loan or to postpone foreclosure is subject to the statute of frauds (codified in section 26.02) and must be in writing. *See Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 582 (W.D. Tex. 2012) (any oral agreement reached with bank to alter plaintiffs obligations under the original loan was a material alteration of the underlying contract and thus subject to the statute of frauds); *Krudop v. Bridge City State Bank*, 2006 WL 3627078, at *4 (Tex. App.—Beaumont 2006) (an agreement to forego or delay foreclosure is a loan agreement subject to the provisions of section 26.02(a)(2)).

As mentioned previously herein, liberally construed, Plaintiff's complaint alleges that Defendant breached both its oral agreement to postpone the foreclosure sale and its written forbearance agreement with Plaintiff. (Doc. 14 at 6). Clearly, Plaintiff's claim for breach of contract as to the oral agreement to postpone foreclosure fails. Plaintiff's allegation that Defendant breached its written forbearance agreement is spared that fate, however. Moreover, contrary to Defendant's assertion, Plaintiff has sufficiently stated a breach of contract claim as to the written forbearance agreement. Specifically, taking his allegations as true, Plaintiff has alleged (1) the existence of a valid contract, to-wit: a written forbearance agreement; (2) that he performed under the agreement by tendering or attempting to tender his mortgage payment; (3) that Defendant breached the agreement by foreclosing; and (4) that Plaintiff sustained damages – monetary and otherwise – as a result.

Based on the foregoing, it is recommended that Defendant's motion to dismiss Plaintiff's breach of contract claims be **DENIED** only as to Plaintiff's claim of breach of the written forbearance agreement.

*7. **Wrongful Foreclosure***

In his *First Amended Complaint*, Plaintiff describes his suit as a "wrongful foreclosure action . . . against the service provider, the holder of the note and if it is a non-judicial foreclosure, against the trustee complaining there was an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a mortgage or deed or court judicial proceeding." (Doc. 14 at 3) Moreover, he references wrongful foreclosure at other instances throughout his *First Amended Complaint*, and prays that the Court declare "that the foreclose [sic] of Plaintiff' residence was wrongful." *Id*. at 2, 13. Liberally construing Plaintiff's complaint, as the Court must, he appears to attempt to also state a claim of wrongful foreclosure, albeit not delineated as such.[6]

In order to allege common law wrongful foreclosure, a plaintiff must establish (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and selling price. *Sauceda v. GMAC Mortg. Corp*., 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008).

In his *First Amended Complaint*, Plaintiff alleges a number of defects in the foreclosure proceedings; specifically, that (1) he was not given statutory notice of default, acceleration, and foreclosure; (2) he was never given notice and opportunity to cure the default as required under the Deed of Trust; (3) notice of the foreclosure sale was not posted at the courthouse door or filed in the with the county clerk, as required under Section 51.002(b) of the Texas Property Code; and (4) that the trustee was improperly substituted. (Doc. 14 at 7). Plaintiff does not allege in his *First Amended Complaint*, however, that the property was sold at a grossly

---

[6] Because Defendant is not under the same obligation to liberally construe the claims of the *pro se* Plaintiff, it is understandable that it did not address Plaintiff's disjointed allegations of wrongful foreclosure in its *Motion to Dismiss*. However, since Defendant requests the Court to "dismiss all of Plaintiff's claims as a matter of law, with prejudice as to the refiling of same," the Court is obligated to address the wrongful foreclosure claim just the same.

inadequate price due to the alleged defects in the sale. Thus, Plaintiff has failed to state a claim for wrongful foreclosure. However, since Defendant has not been given the opportunity to directly move for dismissal of the wrongful foreclosure claim and Plaintiff has never before been put on notice of the defects, it is recommended that Plaintiff be given 14 days from the date of this Recommendation to re-plead his wrongful foreclosure claim, if desired.

8. ***Injunctive and Declaratory Relief***

In its *Motion to Dismiss*, Defendant argues that Plaintiff's requests for injunctive and declaratory relief are without merit because Plaintiff's underlying claims fail. (Doc. 18 at 29). The availability of a declaratory judgment depends upon the existence of a judicially remediable right. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Because the undersigned has concluded that some of Plaintiff's claims fairly state a cognizable action, it is recommended that Defendant's motion to dismiss Plaintiff's request for declaratory and injunctive relief as to those surviving claims be **DENIED**. *See Watson v. CitiMortgage, Inc.*, 814 F.Supp.2d 726, 738 (E.D. Tex. 2011).

## CONCLUSION

Based on the forgoing, it is recommended that Defendant's *Motion to Dismiss* (Doc. 18) be **GRANTED** as to all claims **EXCEPT** (1) Plaintiff's TDCPA claim; (2) Plaintiff's negligent misrepresentation claim related to Defendant's alleged approval of a loan modification; (3) Plaintiff's claim of breach of contract relating to the written forbearance agreement; and (4) Plaintiff's request for injunctive and declaratory relief as to his surviving claims. All remaining claims, with the exception of the wrongful foreclosure claim, fail as a matter of law and should be dismissed with prejudice.[7] As indicated previously herein, Plaintiff is **GRANTED** leave to

---

[7] Generally a district court errs in dismissing *pro se* claims under Rule 12(b)(6) for failure to state a claim without giving the plaintiff an opportunity to amend. *Bazrowx v. Scott*, 136 F.3d

18

amend his complaint to properly allege a wrongful foreclosure action within 14 days or risk dismissal of that action with prejudice as well.[8]

**SIGNED** December 11, 2012.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

1053, 1054 (5th Cir. 1998). However, allowing leave to amend is not required if the pro se plaintiff has already plead her "best case." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

[8] *See Brown v. Texas A & M Univ.*, 804 F.2d 327, 334 (5th Cir. 1986) ("Unless we have searched every nook and cranny of the record, like a hungry beggar searching a pantry for the last morsel of food, and have determined that 'even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would subject the present defendants to liability,' we must remand to permit plaintiff to amend his claim if he can do so.").